IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.   CV 97-J-2584-S |
| | ) | |
| CENTRAL PARKING SYSTEMS OF | ) | |
| ALABAMA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This cause comes before this Court on Defendant's motion to substitute (doc. 22) and motion for summary judgment (doc. 21).

**I.   Undisputed Material Facts**

Defendant provides valet services and parking attendants for several clients in Birmingham, Alabama including The Children's Hospital of Alabama ("Children's Hospital), St. Vincent's Hospital, and the Kirklin Clinic. Plaintiff, a black female, was employed by Defendant. During the time that Plaintiff worked for Defendant she contends she was harassed in various ways in violation of Title VII.

Plaintiff began working for at Defendant's Kirklin Clinic site. While there, Plaintiff alleges that Robert Jones, one of her assistant supervisors asked her if she dated white men and twice asked her for a date. (Plaintiff's depo. at 40). When she rebuffed

Jones and reported his advances to their site supervisor, Craig McClure, McClure spoke to Jones, and Jones did not ask Plaintiff out again. However, Plaintiff contends that Jones began to report her for violations that she did not commit making her work environment hostile.

Plaintiff was also "written up" on four separate occasions, each of which she claims was unfounded. The first write-up was because Plaintiff was allegedly making harassing calls to Kirklin Clinic employees. When questioned about the incident, Plaintiff denied having made the calls from work and told her site manager that what she did on her own time was none of his business. In her deposition, she denies having made the calls at all. After Kirklin security reported to Defendant that Plaintiff had made a call to another Kirklin employee, Plaintiff was transferred to Children's Hospital. At the time Plaintiff agreed to the transfer, she contends that she was promised that she would be promoted to the central cashier's position at Children's Hospital when the position became available. Said position was eventually given to a Native-American female.

The second write-up came while Plaintiff was at Children's Hospital. While on duty, Plaintiff called Defendant's home office to complain that she had been passed over for the promotion. When the Defendant's site managers at Children's Hospital found out about the call, Plaintiff was written up for making a personal call on a company phone on company time. Plaintiff contends that she used her cell phone and that the call was work-related and therefore appropriately made during working hours. The phone was then

2

removed from the toll booth at Children's Hospital in which Plaintiff worked.

Shortly thereafter, Plaintiff was written up a third time for an incident in which Defendant contends that Plaintiff refused to assist customers who were unable to exit the parking deck because the arm across the exit was broken. Defendant contends that Plaintiff made the customers call security themselves even though it was Plaintiff's responsibility to do so. Plaintiff's version of events differs. While P agrees that she would not use the "month/vend" key in the booth to let up the arm and let people out, she contends that her decision was based upon a specific company policy that prohibited attendants from using that key without specific authorization from a supervisor. Since the phone had been removed from Plaintiff's booth, she could not call to get a manager's authorization. Plaintiff does not deny that security was to be called in such situations. However, she says that the button for calling security was next to the cars of the customers waiting to get out and that they could reach said button easier than she could. Thus, she instructed the customers to call security rather than calling them herself. After this incident, Plaintiff was reprimanded for "refusing to help customers" & transferred to Defendant's St. Vincent's Hospital location ("St. Vincent's").

At St. Vincent's, Plaintiff had her final write-up. The incident made the basis of that write-up occurred when Plaintiff pulled into a handicapped parking space in the St. Vincent's parking deck. The St. Vincent's employee responsible for the contract with Defendant, Mr. Berck, saw her pull into the space but did not see a handicapped decal on

3

her car. When Mr. Berck went over to examine Plaintiff's car to see if she had a decal and/ or to ask her to move her vehicle, there was an altercation. Defendant contends that Mr. Berck was satisfied as soon as he saw her handicapped decal. However, Defendant contends that P got very defensive and/ or verbally abusive with Mr. Berck. P contends that she did assert her right to park in the space but never behaved in an inappropriate manner. One of Defendant's employees, Tommy Holmes, came up and defused the situation. Plaintiff contends that Holmes told her "to forget about it." However, some complaint was apparently made to higher-ranking personnel within Defendant's organization. Thus, Plaintiff was written up a fourth time and terminated. Plaintiff was replaced by a black female.

## II.   Summary judgment standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as

4

>to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will

identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala.); citing *Anderson*, 47 U.S. at 251-252.

### III. Analysis

#### A. Sexual harassment

Plaintiff alleges that she was sexually harassed during her tenure at Defendant's Kirklin Clinic location. It is unclear whether or not Plaintiff is alleging *quid pro quo* or "hostile work environment" sexual harassment. In either case, Plaintiff has failed to meet her burden necessary to survive summary judgment

##### 1. *Quid pro quo harassment*

In order for Plaintiff to demonstrate that she was the victim of *quid pro quo* sexual harassment, she must demonstrate that a supervisor harassed her and then took tangible

6

employment action against her based upon her failure to acquiesce to the harasser's advances. *Burlington Industries, Inc. v. Ellerth*, 118 S. Ct. 2257, 2268-2269 (1998). Taken in the light most favorable to Plaintiff, the evidence indicates that Robert Jones had supervisory authority over Plaintiff. However, he only asked her once if she dated white men and twice for a date. Once Plaintiff reported the incident to their site manager, McClure, Jones ceased making advances to Plaintiff. Plaintiff contends that Jones began to report her to McClure for infractions that she did not commit or that were minor. Thus, Plaintiff contends Jones caused Plaintiff to stay "in trouble" with McClure most of the time. Plaintiff has offered no evidence other than her speculation to connect her rebuffing and reporting Jones's advances to his later reporting her to McClure for minor or non-existent violations. Plaintiff's speculation is not evidence and cannot be used to survive summary judgment. In addition, even if Plaintiff's speculation were believed, Plaintiff has not alleged facts sufficient to indicate that her refusal to acquiesce in Jones's advances resulted in a "tangible employment action" as defined by *Burlington*. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington* at 2268. Plaintiff does not allege that Defendant's reassignment of her, their failure to promote her, or her termination was a result of her rebuffing/ reporting Jones. She simply alleges that Jones made her work environment more difficult by consistently reporting her

7

to the site supervisor, McClure. This is not a "tangible employment action" as defined by *Burlington*. Thus, Plaintiff has not alleged facts sufficient to support a *prima facie* claim for *quid pro quo* sexual harassment.

### 2. Hostile work environment harassment

In order to make out a *prima facie* case for hostile work environment sexual harassment, Plaintiff must show that either the advances themselves or the effects of her refusal of said advances created an environment so hostile as to alter the terms or conditions of her employment. *Burlington* at 2265. In order to make this showing Plaintiff must make a showing of severe or pervasive conduct. *Burlington* at 2265 (citing *Oncale v. Sundowner Offshore Services, Inc.*, 118 S. Ct. 998, 1002-1003 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)). Taken in the light most favorable to the Plaintiff, the evidence indicates that Jones asked Plaintiff once if she dated white men and twice for a date. There is no further evidence of any other advances of a sexual nature. However, Plaintiff alleges that her rebuffing and reporting Jones resulted in his wrongful complaints about her work and McClure's resultant scolding of her. Taken in the light most favorable to Plaintiff, the evidence supports the fact that the conduct was pervasive. However, Plaintiff still does not make out her *prima facie* case of hostile work environment harassment because she offers nothing other than her own speculation to link Jones's and McClure's treatment of her with her rebuffing and reporting Jones's advances. Plaintiff's speculation is not evidence and cannot be

8

used to survive summary judgment. Since there is no evidence offered to connect Plaintiff's refusal of Jones's advances to her later troubles with Jones and McClure, Plaintiff has failed to make out a *prima facie* case of hostile work environment sexual harassment.

### B. *Disparate Treatment/ Wrongful Termination*

#### 1. *Disparate Treatment*

Plaintiff claims that she was paid less than non-black employees to do the same work and that she was ultimately terminated because of her race. The only evidence Plaintiff offers of disparate pay relates to the individual, Cheryl Gilliam, that was promoted to the central cashier's position instead of Plaintiff. Plaintiff contends that Gilliam was being paid more than Plaintiff. After the promotion, Gilliam was at a higher "rank" than Plaintiff resulting in Gilliam's higher wage. While Plaintiff has alleged enough facts to survive summary judgment on her failure to promote claim (*see* III, C, *infra*), she cannot recover twice for the same injury. If Defendant violated Title VII by failing to promote Plaintiff, then she will recover on her failure to promote claim which will encompass the fact that Plaintiff was being paid less than Gilliam. If Defendant did not violate Title VII by failing to promote Plaintiff, then her lower wage is not a basis for recovery.

Plaintiff also contends that the disciplinary rules were not applied equally to her and others outside of her protected class. Defendant responds by offering evidence of

other employees who were suspended and/ or terminated in a similar fashion as Plaintiff. Plaintiff strongly takes issue with one of these examples offered by Defendant, a white male named Richard Gray. Plaintiff contends that Gray had problems providing adequate customer service, resigned his employment with Defendant, was rehired, had more customer service problems, and ultimately resigned in lieu of discharge. (*See* Plaintiff's evidentiary submission at Exhibits 20-25.) Plaintiff contends that Gray was allowed more opportunities to correct his behavior and was allowed the opportunity to resign rather than being terminated. While there are indicia that Gray had several customer service complaints, there is no reason to believe that he was not reprimanded for these. (*See* Plaintiff's evidentiary submission at Exhibits 20, 22 & 24.) There is no indication of the exact number of complaints that Gray received before his two resignations. However, this court is aware that factors other than the <u>number of complaints</u> received about an employee can effect the course of one's employment. It is not for this court to sit as a "super-personnel department" to analyze each customer complaint and the procedure that was subsequently followed by the company. What is apparent from the record is that Defendant was not pleased with Gray. While Defendant did re-hire Gray, the duration of this second period of employment was very short. (*See* Plaintiff's evidentiary submission at Exhibits 21 & 24). Plaintiff contends that Gray was "allowed" to resign in lieu of termination. (*See* Plaintiff's evidentiary submission at Exhibits 21 & 24). While Gray's employment separation report is checked "Resignation in lieu of Discharge," the written

10

explanation states:

> Employee was given verbal and written warnings concerning complaints from the client regarding his failure to provide acceptable customer service, rude behavior, and improper operation of the shuttles. Employee has since received another complaint and resigned upon notification.

(*See* Plaintiff's evidentiary submission at Exhibit 24). Gray acknowledged in his employee termination notice that the reason for his resignation was that he was "unable to comply" with the rules established by Defendant. (*See* Plaintiff's evidentiary submission at Exhibit 25). A resignation in lieu of termination clearly indicates that the employer is prepared to terminate the employee and will do so if he or she does not resign. Plaintiff did not agree that she was unable to comply with Defendant's rules. Thus, she felt she had no reason to resign. However, Defendant was not pleased with her performance and chose to terminate her. The fact that Gray saw his termination coming and chose to preempt it while Plaintiff did not is not an indicia that Defendant disciplines and/or terminates individuals differently based upon their race or gender.

### 2. *Wrongful termination*

Plaintiff contends that she was wrongfully terminated. In order to make out a *prima facie* case for wrongful termination, Plaintiff must traditionally demonstrate: (1) that she was a member of a protected class, (2) that she was qualified for the position, (3) that she was fired, and (4) that she was replaced by one outside the protected class. *Hawkins v. CECO Corp.* 883 F.2d 977, 982 (11th Cir. 1989). In the instant case, Plaintiff

11

was replaced by a black female. Thus, she does not me the traditional *prima facie* case for wrongful termination in violation of Title VII. "It is clear, however, that *Hawkins, supra,* does not represent the only prima facie case standard applicable to Title VII wrongful termination claims. In *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515 (11th Cir.1991), the court held that the fourth element of *Hawkins, supra* (i.e., the requirement that the position be filled by someone outside the protected class), 'may also be satisfied by demonstrating that the plaintiff was terminated "while others not in the plaintiff's protected class, having comparable or lesser qualifications, were retained, or that the plaintiff suffered from differential application of work or disciplinary rules."'" *Moore v. State of Alabama,* 989 F. Supp. 1412, 1418 (M.D. Ala. 1997). Plaintiff offers no evidence that others not in the "protected class, having comparable or lesser qualifications, were retained...." *Id.* Thus, Plaintiff can only make her case for wrongful termination if she can demonstrate that she "suffered from differential application of work or disciplinary rules." *Id.* Since she has not done that (*see* III, B, 1, *supra*), Plaintiff has failed to present a *prima facie* case of wrongful termination under Title VII.

### C. Failure to Promote and Retaliation

Plaintiff's remaining claims are for alleged violations of Title VII based upon (1) Defendant's failure to promote her to the position of central cashier at the Children's Hospital location and (2) retaliation. On these claims, genuine issues of material fact remain. Therefore, summary judgment is due to be denied on these two claims.

## IV. Conclusion

Based upon the above analysis and in accordance with the separate order this day entered;

It is therefore **ORDERED** that Defendant's motion for summary judgment (doc. 21) is **GRANTED IN PART and DENIED IN PART**;

It is further **ORDERED** that said motion is **GRANTED** with respect to Plaintiff's claims for sexual harassment and disparate treatment and/or wrongful discharge;

It is further **ORDERED** that said motion is **DENIED** with respect to Plaintiff's claims for failure to promote and retaliation.

**DONE and ORDERED** this the ___7___ day of April, 1999.

Inge P. Johnson
United States District Judge